Date signed September 13, 2011



**JAMES F. SCHNEIDER**
**U. S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

In re:                                    *            Case No. 08-27450-JS

ALAN BRIAN FABIAN,                        *                (Chapter 7)

           Debtor        *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

ZVI GUTTMAN,                              *

    Chapter 11 Trustee for        *
    Strategic Partners Int., Inc.,
                          *

        Plaintiff            *

                             *            Adv. Proc. No. 09-0443-JS

v.                                        *

ALAN BRIAN FABIAN,                        *

        Defendant        *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

*MEMORANDUM OPINION GRANTING A NONDISCHARGEABLE*
*JUDGMENT AGAINST THE DEBTOR IN THE AMOUNT OF $3,046,644.00*

The instant complaint to determine nondischargeability of debt came on for trial on the merits on December 6, 2010. For the reasons set forth, the complaint will be granted and the Court will enter a nondischargeable judgment against the Chapter 7 debtor in favor of the plaintiff in the amount of $3,046,644.

This opinion holds that the trustee of an involuntary Chapter 11 corporate debtor who sued the sole insider for the recovery of fraudulent transfers[1] made with actual intent to defraud creditors, has standing as a creditor on behalf the Chapter 11 estate to obtain a nondischargeable judgment against the insider in his subsequently-filed voluntary Chapter 7 bankruptcy case in the amount of the avoided transfers.

### FINDINGS OF FACT

1. On August 31, 2004, an involuntary Chapter 7 bankruptcy petition was filed (Case No. 04-30227-ESD)[2] by petitioning creditors Fleet Business Credit LLC and DeLage Landen Financial Services, Inc., against Strategic Partners International, Inc. (hereafter "SPI"), a Wyoming corporation doing business in Maryland. On September 27, 2004, the debtor consented to an order for relief and moved to convert the case to

---

[1]For purposes of this opinion, the Bankruptcy Code defines a "transfer" in Section 101(54)(D)(i) and (ii), as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property; or an interest in property." *Id.*

[2]The case was assigned first to Judge E. Stephen Derby and after his retirement, to Judge Nancy V. Alquist.

2

Chapter 11, which was granted by order [P. 28] dated October 6, 2004. On December 15, 2004, Zvi Guttman, Esquire, was appointed Chapter 11 trustee ("Guttman," or "Chapter 11 trustee") by order [P. 95].

2. Alan Brian Fabian (hereafter "Fabian") was the sole officer, shareholder and person in control of SPI.

3. The Trustee filed 11 adversary proceedings in the SPI case against Fabian and others for the recovery of fraudulent conveyances, and for various other causes of action that alleged injury to SPI.[3] Among the other defendants were Fabian's

---

[3](1)  *Guttman v. Cambridge School, Inc. and the Market Development Group, Inc.*, Adv. Proc. No. 06-1202, filed February 21, 2006, which was settled for $148,000 by order [P. 71] entered on August 14, 2009 (Alquist, J.).

(2)  *Guttman v. Fabian, American Patriot PAC, CMAT International, Inc. ["CMAT International"], and the National Republican Congressional Committee*, Adv. Proc. No. 06-1203, filed February 21, 2006, which was settled as to the National Republican Congressional Committee for $25,000, by order entered on August 8, 2006 [P. 31] (Alquist, J.).

(3)  *Guttman v. Fabian and Richards-Fabian, the Centre for Management and Technology, Inc. ("Centre") and CMAT International*, Adv. Proc. No. 06-1319, filed March 22, 2006.

(4)  *Guttman v. Sentient Jet, Inc., Marquis Jet Partners, Inc., Fabian and Richards-Fabian*,  Adv. Proc. No. 06-1364, filed April 12, 2006.

spouse, Jacqueline Richards-Fabian; the Centre for Management and Technology, Inc. ("Centre"), and CMAT International, entities that Fabian created and wholly-owned, as well as  Ocean Quest LLC ("Ocean Quest") and Ocean Quest Investors, Inc. ("Investors"), limited liability companies organized under the law of Maryland and owned and controlled by Fabian.  Five of these adversary proceedings, designated by

---

(5)     *Guttman v. Competitive Innovations LLC*, Adv. Proc. No. 06-01727, filed October 4, 2006, which was settled for $25,000, by order (Alquist, J.) [P. 26] entered April 27, 2009.

(6)     *Guttman v. Ocean Quest LLC, Ocean Quest Investors, LLC, and Fabian*, Adv. Proc. No. 06-1728, filed October 4, 2006.

(7)     *Guttman v. Special Properties, Inc. and Fabian*, Adv. Proc. No. 06-1729, filed October 4, 2006.

(8)     *Guttman v. Fabian*, Adv. Proc. No. 06-1733, filed October 5, 2006.

(9)     *Guttman v. Barclays Bank, PLC, and Ansbacher (Bahamas) Ltd.*, Adv. Proc. No. 06-1735, filed October 6, 2006, which the plaintiff voluntarily dismissed on December 20, 2007 by filing a notice of voluntary dismissal [P. 9].

(10)    *Guttman v. Centre, CMAT International, Fabian and Richards-Fabian*, Adv. Proc. No. 06-1745, filed October 13, 2006.

(11)    *Guttman v. Jacqueline M. Richards-Fabian*, Adv. Proc. No. 06-1986 filed December 1, 2006.

4

the Trustee as the "Remaining Proceedings," form the basis for the instant complaint against Fabian to determine debt to be nondischargeable.

4.  Claims filed by creditors in the SPI case exceed $25 million.  Claims Register, Case No. 04-30227-NVA.

5.  During the course of administering the bankruptcy case, Guttman discovered that Fabian had operated SPI as a "scam" to defraud creditors.  The scam involved sales of nonexistent computer equipment by SPI to Solarcom, Inc. ("Solarcom"), and the lease-back of the equipment by SPI from Solarcom, which assigned its rights under the leases to certain financial institutions that financed the transactions. Guttman also discovered that Fabian had diverted millions of dollars of funds received by SPI from these transactions and converted them to his own use.

6.  Between December 3, 2002 and the Petition Date, more than $9.5 million was transferred from SPI to Fabian and his entities, of which only $1,675,000 was repaid. Therefore, Fabian owed SPI at least $7.8 million, in addition to substantial sums that were transferred to Fabian through numerous intermediate transfers to entities that he owned or controlled.

7.  Fabian caused false and misleading financial statements to be filed in the SPI case.  Specifically, in the various Statements of Financial Affairs ("SOFAs"), Fabian claimed that he received no compensation or distributions from SPI, other than

expense reimbursements.  The Second Amended SOFA contained a reconciliation for the period from January 9, 2002 though October 5, 2004, which indicated that on the Petition Date, Fabian's net indebtedness to SPI for expenses was $155,920.27. However, the Trustee determined that transfers made to Fabian between December 3, 2002 and the Petition Date totaled approximately $3,700,000; that transfers made by SPI during the same period to entities that Fabian owned and controlled totaled approximately $5,580,000; and that SPI received nothing in return.  While the reconciliations attached to the First and Second Amended SOFAs stated that Fabian repaid all of the advances made to him by SPI, Fabian did not list all of the advances. The Trustee's investigations led him to conclude that Fabian's fraudulent behavior continued during the pendency of the SPI bankruptcy case and that it included the filing of false financial documents in the bankruptcy case and the giving of false testimony regarding the assets and obligations of SPI.  These discoveries led Guttman to refer Fabian to the U.S. Attorney for the District of Maryland for criminal prosecution.

8.  On August 8, 2007, Fabian was indicted by a Federal grand jury in the District of Maryland on nine counts of mail fraud, nine counts of engaging in monetary transactions with proceeds of specified unlawful activity, two counts of bankruptcy fraud, two counts of perjury and one count of obstruction of justice, in

6

connection with the sale-leaseback scheme that defrauded creditors of SPI. Indictment issued in *United States v. Alan B. Fabian*, Criminal No. RDB-07-0355 [Plaintiff's Ex. No. 1]. A Superseding Indictment was issued on November 28, 2007, that added two counts of filing false income tax returns and one count of making a false statement to the Internal Revenue Service by filing a 1040 income tax return that contained a false statement.[4] [Plaintiff's Ex. No. 2]. The criminal prosecution effectively halted the progress of the Trustee's adversary proceedings pending against Fabian in the SPI case.

9. On August 10, 2007, the U.S. District Court (Garbis, J.) issued a protective order that prohibited Fabian from transferring, encumbering or otherwise disposing of property of the SPI estate.

10. In May 2008, Fabian pleaded guilty in the U.S. District Court to one count of mail fraud (18 U.S.C. § 1341) and one count of subscribing a false tax return (26 U.S.C. § 7206(1), at which time he admitted having committed fraud in connection with the sale-leaseback scheme. Plea Agreement with Statement of Facts dated May 12, 2008 [Plaintiff's Ex. No. 3]. Fabian acknowledged the criminal nature of his

---

[4]Throughout this opinion, the indictments have been included for the purpose of furnishing a background to these proceedings, and not as evidence of guilt.

conduct in his sworn affidavit to the U. S. District Court in support of his guilty plea, as follows:

Count 9 – Mail Fraud

In approximately 1998, Alan Fabian and a business partner created a limited liability company called Strategic Partners International, Inc. LLC ("SPI LLC"). Fabian was the Managing Partner of SPI LLC. SPI LLC specialized in IT and activity-based costing consulting services. In July 2000, Fabian and his partner sold their ownership interests in SPI LLC to MAXIMUS, Inc., ("MAXIMUS"), a publicly traded government consulting company. SPI LLC became a wholly-owned subsidiary of MAXIMUS, a status it retained until September 2001. In September 2001, MAXIMUS merged SPI LLC out of existence. Fabian signed the Articles of merger on behalf of SPI LLC, which explicitly stated that SPI LLC ceased to exist. On March 14, 2002, Fabian incorporated a new company called Strategic Partners International Incorporated ("SPI, Inc."). He did not inform MAXIMUS that he had incorporated SPI, Inc. and MAXIMUS had no ownership interest in SPI, Inc. Rather, Fabian was the 100 percent owner of SPI Inc.

Beginning in approximately March 2001, Fabian caused SPI LLC and later SPI, Inc. (collectively referred to as "SPI") to enter into a series of sale-leaseback transactions of computer equipment and software with a leasing broker, Solarcom, Inc. ("Solarcom"). Fabian specified the equipment and software that was to be the subject of each sale-leaseback transaction. Solarcom in turn located third-party funding sources for the transactions. Solarcom then purchased the specified computer equipment and software from SPI using funds made available by the funding sources, and leased the equipment and software back to SPI. SPI paid three months' rent (plus tax) to Solarcom and then owed the remaining monthly payments to the funding sources. Solarcom mailed a check to SPI to purchase the equipment specified under each particular lease. The funding sources to which Solarcom directed the SPI sale-leaseback transactions between 2001 and 2004 included the following financial institutions: Deutsche Financial Services Corporation

("Deutsche"), DeLage Landen Financial Services, Inc. ("DLL"), Fleet Business Credit LLC ("Fleet"), and Key Equipment Finance ("Key").

Between approximately March 2001 and June 2004, SPI obtained approximately $32,000,000 in funds from Solarcom after Deutsche, DLL, Fleet and Key funded the sale-leaseback transactions. All $32,000,000 was deposited into SPI bank accounts over which Fabian had sole signatory authority. Between March 2001 and June 2004, Fabian caused SPI to pay approximately $3,300,000 to Solarcom and approximately $12,900,000 to the funding sources in rent payments.

In connection with the above-described sale-leaseback transactions, Fabian provided Solarcom with equipment itemization spreadsheets describing the equipment to be sold and executed various documents prepared by Solarcom. Beginning in 2003, in response to requests from Solarcom, Fabian also provided Solarcom with invoices and wire transfer advices of debit, which Solarcom transmitted to the funding sources. These documents contained material misrepresentations that Fabian made with knowledge of their falsity.

With respect to most of the transactions that took place between March 2001 and the Fall of 2003, SPI did not purchase the Dell servers, laptops, and other items of hardware that it purported to sell to, and lease back, from Solarcom. One example is a sale-leaseback transaction that Fabian caused SPI, Inc. to enter into on or about April 17, 2003. In that transaction, Fabian provided Solarcom with an equipment itemization form which stated that SPI had purchased 15 Dell Latitude D800 laptops at a per unit price of $4,999 and four Dell Poweredge 8450 servers at a per unit price of $19,999, for a total cost of $154,981. In fact, as Fabian well knew, SPI had purchased none of the listed Dell equipment that it purported to sell to, and lease back from, Solarcom in connection with that transaction. Based on Fabian's misrepresentations, Solarcom paid SPI $154,981 for this computer hardware that SPI had not purchased.

Beginning in the fall of 2003, Fabian caused SPI to purchase certain computer hardware from Dell, but provided fraudulent Dell quotes and invoices to Solarcom to make it appear that the items SPI had

purchased were different, substantially more expensive pieces of hardware. Fabian also created fraudulent wire transfers which reflected wire transfers from Fabian's SPI accounts to Dell that never happened. When a representative of DLL inquired of Solarcom whether the wire confirmations that Fabian presented were reflections of actual transactions, Fabian falsely stated in an email to representatives of Solarcom and DLL that they were screenprints from his computer captured right after the wires were executed. Recovered from Fabian's laptop that contained SPI's electronic records was a template that Fabian used to create the false Dell documentation. A template used to create fraudulent wire transfer records was also recovered from Fabian's laptop.

Between approximately June 2001 and early 2003, SPI purported to sell to, and then lease back from Solarcom, software marketed by ABC Technologies ("ABC") and SAS Institute ("SAS"). SPI never made any purchases of software from ABC or SAS. Instead, SPI purported to sell, and then lease back, licenses of software that MAXIMUS had been provided for free to use in its consulting engagements as part of a marketing agreement. In reality, these software licenses were not transferable and could not be used by anyone other than MAXIMUS consultants.

From 2003 through 2004, SPI purported to purchase software, in arms length transactions, from Special Properties, Inc. ("Special Properties") and SMART Software USA ("SMART Software"). Fabian controlled both of these entities. Fabian misrepresented to Solarcom and the funding sources that Special Properties and SMART Software were controlled by other persons and that he made legitimate software purchases from these entities. Although Fabian transferred money from SPI's bank accounts to bank accounts in these entities' names, which he controlled, SPI did not purchase software from either of these companies.

When asked by Solarcom about Special Properties, Fabian told Solarcom that it was controlled by another person. When asked for invoices and wire receipts to confirm software purchases from this company, Fabian provided Solarcom with false invoices and false wire

receipts, which he created and then falsely claimed were provided to him by Special Properties. At that time, Fabian knew that he had incorporated a company called Special Properties, that he had opened a bank account in the name of Special Properties, and that SPI had, in fact, made no purchases of software from Special Properties.

When asked about SMART Software, Fabian misrepresented to Solarcom that it was an importer, or sales agent of an importer, of software developed overseas from which SPI purchased software licenses. At that time, Fabian knew that SMART Software was a trade name for CMAT International, Inc. ("CMAT International") which was a for-profit entity that he controlled. Based on Fabian's misrepresentations that SPI had purchased software from SMART Software, Solarcom paid SPI almost $5,000,000 to purchase the software as part of sale-leaseback transactions.

Fabian purported to obligate MAXIMUS for payment on the leases in the event of a default. To that end, Fabian executed documents on behalf of MAXIMUS which misrepresented his authority to bind MAXIMUS. MAXIMUS was not aware that Fabian was purporting to obligate MAXIMUS on the leases, and Fabian, in fact, lacked the authority to do so.

In early 2003, DLL learned that SPI LLC no longer existed. When asked about this, Fabian told a Solarcom employee that the "LLC" was not consistent with MAXIMUS' corporate structure so he had incorporated SPI, Inc. Fabian falsely stated to the Solarcom employee that SPI, Inc. remained a wholly-owned subsidiary of MAXIMUS. In or about April 2004, Fabian caused another MAXIMUS employee in his group to falsely represent to Solarcom and DLL that SPI, Inc. was a wholly-owned subsidiary of MAXIMUS.

With respect in particular to Count 9, on or about June 9, 2004, Fabian made several material misrepresentations in the paperwork he submitted to Solarcom for that transaction. With respect to the hardware included in that deal, Fabian represented to Solarcom that SPI had purchased 50 Dell Powerage servers at a per unit price of $26,422 for a

total of $1,387,155. To bolster this claim, Fabian provided Solarcom with: (1) a fraudulent Dell quote, dated May 20, 2004, purporting to show that Dell had quoted the $26,422 price per server; and (2) a fraudulent wire transfer record purporting to show that SPI had wired $1,387,155 to Dell's account at Mellon Bank on May 20, 2004. No such wire transfer was made to Dell. In addition, the Dell service tags that Fabian provided to Solarcom in connection with these 50 servers corresponded to different, much cheaper servers that SPI had purchased from Dell in February 2004 and April 2004 at a per unit price of approximately $605 and $809, respectively. With respect to the software included in the June 2004 transaction, Fabian represented to Solarcom that SPI had purchased $748,125 in software licenses from SMART Software. To bolster his claim, Fabian provided Solarcom with: (1) an invoice from SMART Software dated May 20, 2004 for the supposed sale of 15 licenses each of three software programs, totaling $748,125; and (2) a fraudulent wire transfer record purporting to show that, on May 20, 2004, SPI had wired $748,125 to an account at Barclay's Bank in New York in the name of SMART Software. SMART Software did not maintain an account at Barclay's Bank, and SPI did not wire or otherwise provide $748,125 to SMART Software on May 20, 2004. Based on Fabian's misrepresentations, on or about June 11, 2004, Solarcom mailed a check to SPI in Maryland in the amount of $2,033,600 for this hardware and software.

In July 2004, Fabian defaulted on 11 outstanding leases, several of which were consolidations of earlier leases. *Of the $32,000,000 that SPI received from the funding sources through Solarcom, Fabian used a large sum of the money to create CMAT. Fabian also used sale-leaseback proceeds, among other things, to purchase real estate in North Carolina, to make donations to his children's private school, and to pay for private jet travel.*

*After the defaults, SPI, Inc. was forced into bankruptcy. As part of the bankruptcy process, Fabian provided false testimony under oath at depositions in October and November 2004. Specifically, Fabian testified that, among other things, SMART Software was an overseas company based in the Netherlands and that he could not recall the name of the person at SMART Software who sent to him by email SMART*

> *Software invoices.  In fact, Fabian controlled SMART Software and created the SMART Software invoices that he claimed had been emailed to him from someone in the Netherlands.  He provided this false testimony in an attempt to conceal the fact that he controlled SMART Software and to make it appear the SPI had purchased software licenses from SMART Software, when in fact, it had not.  Further, in order to conceal that the money Fabian transferred from SPI, Inc.'s bank accounts to his CMAT bank accounts was for his own use and not actually for the purchase of software, Fabian filed a false Statement of Financial Affairs with the bankruptcy court.  Fabian indicated in that document that millions of dollars transferred to CMAT was for the purchase of software from SMART Software when in fact, the transfers to CMAT were not made to purchase software.*

> *When agents of the bankruptcy trustee attempted to verify the information Fabian provided, Fabian further attempted to conceal that he had not in fact purchased the software.  To that end, Fabian caused two software vendors to create paperwork for software sales in late 2004/early 2005 that reflected that the sales took place in 2004.*

Plea Agreement, *United States v. Alan B. Fabian*, dated May 12, 2008, Attachment A, Statement of Facts, pp. 12-15, Plaintiff's Ex. No. 3. [Emphasis supplied.]

11.  On October 31, 2008, Fabian was sentenced to 108 months' imprisonment dating from January 7, 2008, and was ordered to pay restitution in the amount of $40,162,633.82.  Criminal Judgment/Sentencing – Docket Nos. 126, 142, 145 and 147 (*United States v. Alan B. Fabian*; Criminal No. RDB-07-0355) [Plaintiff's Ex. No. 4].  Fabian is currently incarcerated.

12.  On December 31, 2008, Fabian filed a voluntary Chapter 7 bankruptcy petition (Case No. 08-27450-JS).  On that date, the adversary proceedings pending

against him in the SPI bankruptcy had not been adjudicated and were stayed as to

Fabian by operation of the automatic stay.

13.   Schedules filed by Fabian in the Chapter 7 listed assets of $3,693,175.32

and liabilities of $52,067,168.75.  Summary of Schedules, Chapter 7 Petition in Case

No.  08-27450-JS [P. 1] at 17, filed December 31, 2008.  On Schedule F, he listed

Guttman as the holder of an unsecured, nonpriority claim in the amount of "0.00." [P.

1] at 62.[5]

14.   On June 30, 2009, Guttman as Chapter 11 Trustee of SPI filed the instant

four-count complaint pursuant to Section 523(a)(2)(A), (a)(4) and (a)(6),[6] to determine

the nondischargeability of debt based upon the amount of fraudulent conveyances

avoidable and recoverable against Fabian, as debts owed to the bankruptcy estate of

---

[5]On April 6, 2009, Maximus, Inc. ("Maximus"), a creditor of SPI, filed a
complaint in Fabian's Chapter 7 bankruptcy case against him pursuant to 11 U.S.C.
Section 523(a)(13), by which it sought to have this Court determine as
nondischargeable the criminal restitution payable to Maximus by Fabian in the amount
of $16,275,964.12 .  On May 18, 2009, this Court approved a consent order by and
between Maximus and Fabian whereby the parties agreed that the said amount be
determined to be non-dischargeable, pursuant to 11 U.S.C. § 523(a)(13). Fabian listed
Maximus as the holder of a $32,000,000 judgment against him entered in the Circuit
Court for Howard County on July 17, 2004.  Schedule F, Petition [P.1 ] at 49.

[6]The filing of the instant complaint in the Chapter 7 debtor's bankruptcy case
was not a violation of the automatic stay of 11 U.S.C. § 362(a).  *National City Bank
of Minneapolis v. Lapides (In re Transcolor)*, 296 B.R. 343, 358 (Bankr. D. Md.
2003) ("The majority view is that the Code implicitly permits the filing of suit in the
bankruptcy court against a debtor without violating the automatic stay.").

SPI for money obtained by Fabian  as the corporate insider of SPI[7] through actual fraud, pursuant to Section 548(a).  The complaint alleged that the transfers were made with actual fraudulent intent, based upon (1) Fabian's admissions contained in the guilty plea and (2) upon the Trustee's proof of the allegations contained in five of the fraudulent conveyance adversary proceedings pending in the SPI bankruptcy case, (collectively, the "Remaining Proceedings.").

15.   Each of the Remaining Proceedings sought the avoidance of transfers comprised of proceeds received by SPI from the sale-leaseback scheme that were transferred to Fabian and others.  Fabian prayed a jury trial in three of the Remaining Proceedings, namely *Guttman v. Sentient Jet, Inc., et al.*, Adv. Proc. No. 06-1364; *Guttman v. Ocean Quest, LLC, et al.*, Adv. Proc. No. 06-1728; and *Guttman v. Fabian*, Adv. Proc. No. 06-1733, but not in *Guttman v. Fabian, et al.*, Adv. Proc. No. 06-1319; or *Guttman v. Centre for Management and Technology, Inc., et al.*, Adv. Proc. No. 06-1745.

THE REMAINING PROCEEDINGS

---

[7]Fabian was an "insider" of the debtor corporation, as defined by the Bankruptcy Code in Section 101(31)(B)(i),(ii), and (iii), as a "director," "officer" or "person in control" of the debtor.  *Id.*

16.  The five Remaining Proceedings are before this Court (Schneider, J.) by reason of the filing by the Chapter 11 Trustee of the instant complaint to determine nondischargeability in this Chapter 7 bankruptcy case.

*Guttman v. Fabian and Richards-Fabian, Centre and CMAT International, Adv. Proc. No. 06-1319* ["Remaining Proceeding No. 1."]

17.  This nine-count complaint sought the avoidance and recovery of fraudulent conveyances made by SPI to the defendants pursuant to Sections 548 and 550 and/or State law.  Count 1 alleged fraudulent conveyances made to Fabian and his wife within one year of the Petition Date in the amount of $1,653,644; Count 2, fraudulent conveyances to the Fabians within two years of the Petition Date in the amount of $3,046,644; Count 3, fraudulent conveyances made one year prior to the Petition Date that were credited to an account of Fabian at Sentient Jet in the amount of $349,288.90; Count 4, fraudulent conveyances made two years prior to the Petition Date that were credited to an account of Fabian at Sentient Jet in the amount of $613,815.81; Count 5, fraudulent transfers made to Centre within one year prior to the Petition Date for the benefit of Fabian in the amount of $4,270,000; Count 6, fraudulent transfers made to Centre within two years prior to the Petition Date for the benefit of Fabian in the amount of $5,580,000; Count 7, fraudulent transfers made to CMAT International as a mediate or immediate transferee within one year prior to the

16

Petition Date in any amount to be proven; Count 8, the alternative recovery of preferential payments made within one year of the Petition Date to Centre, CMAT International or the Fabians in the amount of $4,270,000; and Count 9, the recovery from Fabian for compensatory and punitive damages to be proven at trial. Complaint in Adv. Proc. No. 06-1319 [Plaintiff's Ex. No. 9].

*Guttman v. Sentient Jet, Marquis Jet Partners, Fabian and Richards-Fabian, Adv. Proc. No. 06-1364* ["Remaining Proceeding No. 2"]

18.  On July 11, 2006, the Trustee filed an amended complaint that joined Fabian and Richards-Fabian as co-defendants. On September 1, 2006, Fabian entered a demand for trial by jury. [P. 20]. By order [P. 57] (Alquist, J.) entered on January 14, 2009, the Trustee's settlement with IJB Company, formerly known as Sentient Jet and Marquis Jet Partners, was approved in the amount of $65,000.

*Guttman v. Ocean Quest LLC, Ocean Quest Investors, Inc. and Fabian., Adv. Proc. No. 06-1728* ["Remaining Proceeding No. 3"]

19.  This adversary proceeding sought the recovery of fraudulent conveyances in the amount of $573,458.00 made by SPI to Ocean Quest that Fabian used to purchase waterfront real estate in North Carolina. Between October 20, 2003 and July 7, 2004, Fabian caused SPI to make seven fraudulent transfers from the debtor's bank account at Mercantile to the Ocean Quest account in the total amount of $573,458, for which recovery was sought in Counts 1 and 2; Count 3 charged Fabian with breach

of fiduciary duty to the corporation and Count 4 sought injunctive relief against all defendants to enjoin them from disposing of certain beach properties.  On November 14, 2006, the Trustee filed an amended complaint that sued Ocean Quest for breach of fiduciary duty in Count 3 and added Count 5 against all defendants for the imposition of a constructive trust upon proceeds from any sales of the beach properties.[8]  Complaint in Adv. Proc. No. 06-1728 [Plaintiff's Ex. No. 11].

20.  The complaint alleged that Fabian deposited funds in the total amount of $573,458 into an account that he opened in the name of Ocean Quest ("Ocean Quest Account") at Mercantile, for which Fabian was the sole signatory.  The complaint

---

[8]The same day, the Trustee filed a motion for temporary restraining order and preliminary injunction [P. 7], in which he sought to enjoin any prospective sale of the beach properties, at least three which he alleged had been listed by Fabian "for sale at respective list prices of $1,400,000, $700,000 and $1,400,000."  Motion for temporary restraining order and preliminary injunction, p. 5.  On December 1, 2006, the Court (Alquist, J.) entered a temporary restraining order [P. 24], which it extended on December 11, 2006, by order [P. 32].  However, after a hearing, Judge Alquist denied the Trustee's motion for a preliminary injunction by order [P. 38] entered on December 14, 2006.  On November 15, 2007, Judge Alquist granted the Trustee's motion for reconsideration by order [P. 86] that required Fabian to notify the Trustee of prospective sales of the beach properties.  On March 27, 2008, U.S. District Judge Garbis entered an order [P. 90] that denied the defendants' motion to withdraw the reference from the bankruptcy court and which indicated that, because of the pending criminal prosecution of Fabian, "that developments in related cases have rendered it inappropriate for this case to proceed actively at the present time."  *Id.*  Thereafter, on August 12, 2008, Judge Alquist entered an order [P. 94] that approved the motion [P. 93] of Ocean Quest LLC to sell two of the beach properties identified as 117 and 119 Ocean Boulevard, Holden Beach, North Carolina, "subject to compliance with provisions of orders of the United States District Court."  *Id.*

18

alleged that Fabian was the sole owner of Ocean Quest and that the transfers to it from SPI were made without consideration for the sole benefit of Fabian. In support of the complaint, the Trustee submitted copies of the Ocean Quest LLC bank statements at Mercantile in Account No. 6704808.

*Guttman v. Fabian, Adv. Proc. No. 06-1733* ["Remaining Proceeding No. 4"]

21. This three-count complaint was brought by the Trustee against Fabian for the avoidance and recovery of fraudulent conveyances made to him by SPI. Count 1 sought the avoidance and recovery of fraudulent conveyances in the amount of $3,523,056 made during the one year prior to the Petition Date; Count 2, for fraudulent transfers made during the two-year period prior to the Petition Date in the amount of $5,433,380; and Count 3 charged Fabian with breach of fiduciary duty. Complaint in Adv. Proc. No. 06-1733 [Plaintiff's Ex. No. 12]. After a hearing before Judge Alquist on March 19, 2007, the Court denied Fabian's motions for a more definite statement, joinder of Maximus as a necessary party and for dismissal of Count 3. On April 7, 2007, Fabian filed an answer [P. 27] to the complaint and a demand for jury trial [P. 28]. On April 20, 2007, Fabian filed a motion to withdraw the reference [P. 30], which the District Court (Garbis, J.) denied by order [P. 41] entered on March 28, 2008.

19

*Guttman v. Centre, CMAT International, Fabian and Richards-Fabian, Adv. Proc. No. 06-1745* [Remaining Proceeding No. 5]

22.   The Trustee filed this adversary proceeding for the avoidance of two postpetition transfers made by Centre to the defendants in the total amount of $40,000. Fabian was the sole signatory on a prepetition checking account at Mercantile in the name of SPI (Account No. 6582028) ( "SPI Prepetition Account"), that was the sole depository account that SPI maintained from November 2002 until the Petition Date. After the involuntary bankruptcy petition was filed against SPI, Fabian opened another account at Mercantile on September 10, 2004, in the name of SPI (Account No. 6719538) (the "SPI Postpetition Account"), for which Fabian was also sole signatory.  On January 28, 2005, Fabian filed an operating report on behalf of SPI for the period from September 1, 2004 through December 21, 2004, that Fabian verified as president of SPI.  Appended to the report was a schedule of SPI's cash receipts and disbursements that indicated that a $25,000 deposit was received by SPI from Centre on September 29, 2004 and was disbursed back to Centre on October 1, 2004.  While the schedule characterized both the receipt and disbursement of funds as a "bank error," the $25,000 disbursement was instead a wire transfer that Fabian caused to be made in that amount.  A so-called "advance" of $15,000 to Fabian on October 18,

20

2004, was alleged instead to be an unauthorized disbursement to Centre. Complaint in Adv. Proc. No. 06-1745 [Plaintiff's Ex. No. 13].

THE INSTANT COMPLAINT

23.  In the instant complaint, the Trustee repeated the allegations made against Fabian in the Remaining Proceedings, regarding the actual fraud committed by Fabian in connection with the sale-leaseback of computer equipment and his diversion of corporate assets to himself.  Complaint, ¶¶ 9 and 10.  The Trustee alleged in the complaint that the amount of fraudulent transfers recoverable against Fabian total more than $5,000,000, and prayed that a nondischargeable judgment be entered in that amount.

24.  Fabian filed several answers to the instant complaint which this Court treated as a motion to dismiss or in the alternative, as a motion for summary judgment. In his various pleadings, Fabian set forth the following grounds for dismissal: (1) limitations; (2) failure to state a claim for which relief may be granted; (3) failure to allege fraud with particularity; (4) failure to timely file the complaint; (5) lack of standing; (6) that the complaint was barred by the doctrine of *in pari delicto*; (7) that the complaint was barred by the doctrines of collateral estoppel and *res judicata*; and (8) that this Court lacked subject matter jurisdiction to determine the debt to be

21

nondischargeable because the obligation to pay restitution is not property of the bankruptcy estate.

25.  The motions to dismiss were denied by this Court (Schneider, J.), by memorandum opinion [P. 18] and order [P. 19] entered on March 22, 2010.  The opinion held that the Chapter 11 Trustee has standing in this adversary proceeding to seek a nondischargeable judgment against Fabian in his Chapter 7 case for the recovery of fraudulent conveyances based upon allegations that Fabian committed fraud, embezzlement, larceny and willful and malicious injury.  Likewise, this Court held that the complaint survived the debtor's affirmative defenses of limitations, failure to state a claim for which relief can be granted and the doctrines of *res judicata*, collateral estoppel and *in pari delicto*.  *Guttman v. Fabian (In re Fabian)*, 2010 WL 1172950 (Bankr. D. Md. 2010).

26.  On December 6, 2010, trial was held on the instant complaint, at the conclusion of which this Court issued an oral opinion in which it granted the complaint and instructed the Trustee to submit a post-trial memorandum calculating the amount of damages proven against the defendant.

27.  On February 16, 2011, the Trustee submitted a line [P. 71] in which he calculated the amount of the nondischargeable judgment to be $4,957,142.  The figure is comprised of the following funds of SPI that were diverted by Fabian to the

22

following bank accounts over which he had control that were on deposit at Mercantile-Safe Deposit & Trust Co. ("Mercantile"): (a) Account No. 5676 in the name of A. Fabian, in the amount of $2,808,644.00; (b) Account No. 4808 in the name of Ocean Quest, in the amount of $573,458.00; (c) Account No. 2036 in the name of Special Properties, in the amount of $848,040.00;[9] and (d) Account No. 2541 in the name of Patriot PAC, a political action committee, in the amount of $730,000.00, based upon bank statements[10] (Plaintiff's Ex. Nos. 17-27). Plaintiff's Line Calculating Amount of Judgment [P. 71].

28. Attached to the foregoing and in support of his calculations, the Trustee submitted a report prepared by the accounting firm of Invotex Group documenting the transfers of funds from SPI to the bank accounts that were controlled by Fabian. Exhibit A to the Line; Defendant's Ex. No. 10.

29. In addition, the Trustee submitted into evidence copies of bank statements in the names of Alan B. Fabian and Jacqueline M. Richards-Fabian at Mercantile in Account No. 4625676. Plaintiff's Ex. No. 21.

---

[9]Because the Trustee did not include *Guttman v. Special Properties, Inc., et al*, Adv. Proc. No. 06-1729, among the Remaining Proceedings, proof of transfers in this amount would seem to be unrelated to any matters pending before this Court.

[10]Likewise, this figure appears to be unrelated to the present cause of action because the Trustee did not include *Guttman v. Fabian, et al*, Adv. Proc. No. 06-1203 as one of the Remaining Proceedings.

30.  On March 14, 2011, Fabian filed a response [P. 72] in which he contested the calculations presented by the Trustee, raised certain defenses to the numbers and asserted that, after deducting various credits due to him from SPI, he owed nothing to the plaintiff.  It is noted that to date, Fabian has not filed a claim in the SPI case.,

## CONCLUSIONS OF LAW

SUBJECT MATTER JURISDICTION

1.  The bankruptcy court has subject matter jurisdiction over the instant adversary proceeding to determine dischargeability of debt, which is a core proceeding, pursuant to 28 U.S.C. §§ 157(b)(2)(I) and 1334.  Venue is proper pursuant to 28 U.S.C. § 1409.

2.  Likewise, "[a]n action by a chapter 7 trustee to recover alleged fraudulent conveyances under the Bankruptcy Code is a core proceeding."  *Hudgins v. Shah (In re Sys. Eng'g & Energy Mgt. Assoc., Inc.)*, 252 B.R. 635, 650 (Bankr. E.D. Va. 2000), citing *Huffman v. Perkinson (In re Harbour)*, 840 F.2d 1165, 1169-70 (4th Cir. 1988).

3.  "Core proceedings are those [proceedings] that invoke a substantive right provided by Title 11 or by their nature could arise only in the context of a bankruptcy."  *Walter v. Freeway Foods of Greensboro, Inc. (In re Freeway Foods of Greensboro, Inc.*, 449 B.R. 860, 874 (Bankr. M.D. N.C. 2011), citing  *Morrison v. Western Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473, 479 (5th Cir.

24

2009), (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987); *Janssen v. Hirsch (In re Creekside Vineyards, Inc.)*, No. CIV 2:09–2273 WBS EFB, 2009 WL 3378989, at *6 (E.D. Cal. Oct. 19, 2009) (quoting *In re Gruntz*, 202 F.3d 1074, 1081 (9th Cir. 2000)); *Silliman v. General Motors Corp.*, No. 1:09–CV–1603–RWS, 2009 WL 3063371, at *2 (N.D. Ga. Sept. 22, 2009); *Mirant Corp. v. The Southern Company*, 337 B.R. 107, 117 (N.D. Tex. 2006); *Allen v. J. K. Harris & Co., L.L.C.*, 331 B.R. 634, 640–41 (E.D. Pa. 2005); *PSA, Inc. v. Inter–World Communications, Inc. (In re PSA, Inc.)*, No. 00–3570(CGC), 2003 WL 22938894, at *2 (Bankr. D.Del. Dec. 8, 2003). *See also Gardner v. U.S. (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir. 1990) ("Core proceedings are proceedings which have no existence outside of bankruptcy," citing *In re Alexander*, 49 B.R. 733, 736 (Bankr. D. N.D. 1985)).

4.   The instant complaint to determine dischargeability of debt is brought pursuant to Section 523 (a)(2)(A), (a)(4) and (a)(6) of the Bankruptcy Code.[11]  The

---

[11]Section 523(a)(2)(A), (a)(4) and (a)(6) provides, as follows:

### § 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

\*          \*          \*          \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–

25

essence of the instant complaint is Fabian's misconduct in defrauding SPI, the Chapter 11 Trustee, the bankruptcy estate and its creditors in order to enrich himself and entities that he owned or controlled for his personal benefit.

5. The function of this Court in the instant adversary proceeding is to consider whether Fabian's alleged misconduct, for which he was being sued in the SPI Chapter 11 case, will result in a nondischargeable judgment against him in his Chapter 7 case. Fundamental to the rendering of such a nondischargeable judgment against Fabian is the requirement that the Trustee prove that Fabian possessed actual fraudulent intent in making the alleged fraudulent conveyances to himself as an agent of SPI. Therefore, the Court must consider (1) which counts in the Remaining Proceedings are relevant to prove the essential element of actual fraudulent intent on the part of

---

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

\*      \*      \*      \*

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

\*      \*      \*      \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6).

Fabian; (2) if so proven, to determine what if any amount is recoverable from Fabian in the form of a judgment in favor the SPI bankruptcy estate; and (3) to assess whether any such judgment satisfies the requirements of the Code in order to be rendered nondischargeable.

## THIS COURT HAS NO JURISDICTION TO ENTER NONDISCHARGEABLE JUDGMENTS AGAINST NONDEBTORS

6.  In the context of Fabian's Chapter 7 case, this Court has no subject matter jurisdiction over nondebtors, including Fabian's wife, in the avoidance and recovery of fraudulent conveyances or the rendering of judgments, nondischargeable or otherwise.  The Remaining Proceedings (and other adversary proceedings filed in the SPI Chapter 11 bankruptcy case that are still pending) were not stayed as to the nondebtor parties by Fabian's filing of his Chapter 7 petition.  Accordingly, to the extent that those entities were within the exercise of the personal and subject matter jurisdiction of the bankruptcy court (Alquist, J.), they remain so. The only subject matter jurisdiction being exercised by this Court in this adversary proceeding is the avoidance and recovery of alleged fraudulent conveyances against Fabian for the purpose of determining whether any such recovery is nondischargeable against him. Accordingly, the subject matter jurisdiction of this Court in the instant adversary proceeding extends only to those counts in the Remaining Proceedings that implicate Fabian.  *See infra*.

27

## JURISDICTION OVER THE REMAINING PROCEEDINGS

*Remaining Proceeding No. 1 – Adv. Proc. No. 06-1319*

7.  Because this Court has no jurisdiction over nondebtors, it will not consider Counts 3 and 4 against Sentient Jet, Counts 5 and 6 against Centre and Count 7 against CMAT International.  Count 8, which seeks alternative relief against Fabian for the recovery of preferential payments, will be dismissed because that cause of action does not implicate the presence of fraudulent intent.  Because the Trustee did not offer proof of compensatory and punitive damages against Fabian at trial, Count 9 will also be dismissed.  This leaves Counts 1 and 2 for the avoidance and recovery of fraudulent conveyances made to Fabian directly.  The Court will proceed only as to Count 2, which alleges that 60 fraudulent transfers amounting to $3,046,644 were made to and deposited into Fabian's accounts on the same dates, between November 26, 2002 and July 7, 2004, either by automated clearinghouse or wire transfers. Strategic Partners Transfers to Alan Fabian (excluding jet payments), Exhibit A to Complaint [P. 1] Adv. Proc. No. 06-1319, and Memorandum from Raymond Peroutka dated May 11, 2005, Defendant's Ex. No. 10.

*Remaining Proceeding No. 2 – Adv. Proc. No. 06-1364*

8.  This adversary proceeding was settled as to the nondebtor entities in the SPI case by reason of the settlement paid in the amount of $65,000.  Complaint in Adv.

Proc. No. 06-1364 [Plaintiff's Ex. No. 10]. Based upon the evidence presented, this Court is unable to determine the extent to which any of the transfers made to the defendants on behalf of Fabian for jet travel were fraudulent, as being for his personal use, and which were legitimate expenses for business travel. In fairness to Fabian, because the amount of the transfers sought to be recovered from him is practically the same amount as that paid in the settlement, this Court in its discretion will not include Remaining Proceeding No. 2 in this opinion.

*Remaining Proceeding No. 3 – Adv. Proc. No. 06-1728*

9. Likewise, this Court will not address Remaining Proceeding No. 3, which alleged that Fabian was the recipient of fraudulent conveyances paid to the two Ocean Quest entities, neither of which is before this Court in the context of this complaint. The Court is concerned that issues of corporate veil piercing in the avoidance and recovery of fraudulent conveyances from nondebtor entities ought not cloud the issue of Fabian's liability for a nondischargeable judgment rendered for the recovery of fraudulent conveyances received by him. An additional reason lies in the fact that sales of property owned by the Ocean Quest entities were approved by this Court (Alquist, J.), wherefore the effect of these approved sales upon this proceeding is speculative.

*Remaining Proceeding No. 4 – Adv. Proc. No. 06-1733*

29

10.   This adversary proceeding sought more than the mere recovery of fraudulent transfers.   Some of the requested relief is duplicative of that which was sought in Remaining Proceeding No. 1.   In addition, the amounts asserted as fraudulent conveyances to be avoided and recovered exceeded the amounts that the Trustee has requested be included in a nondischargeable judgment.   Therefore, the Court will not proceed as to Adv. Proc. No. 06-1733.

*Remaining Proceeding No. 5 – Adv. Proc. No. 06-1745*

11.   This adversary was filed against four defendants, of whom Fabian is the only party over whom this Court has jurisdiction to enter a nondischargeable judgment.   However, the allegations made throughout the complaint of postpetition transfers indicated that all such transfers were made and received by Centre, a nondebtor entity.   Therefore, this Court will not adjudicate the merits of this adversary proceeding because to do so would require the piercing of the corporate veil of nondebtor entities, owned and controlled by Fabian, in order to enter a judgment or judgments against him.

NO ISSUES EXIST RELATIVE TO TRIAL BY JURY

12.   Because the Court has disposed of Remaining Proceedings Nos. 2, 3 and 4, in which Fabian prayed a trial by jury before Judge Alquist, the issue of whether he might have been entitled to a jury trial, pursuant to *Granfinanciera, S.A. v. Nordberg*,

30

492 U.S. 33, 109 S.Ct. 2782, 106 L. Ed.2d 26 (1989), is not before this Court.  He did

not request a trial by jury in Remaining Proceedings Nos. 1 and 5, nor in the instant

complaint.

## I.  FRAUDULENT CONVEYANCES

13.  Fabian has argued throughout these proceedings that Guttman cannot sue

him on behalf of SPI for fraudulent and criminal conduct that Fabian admits candidly

to having committed, because, he says, as the sole owner of SPI, he cannot defraud his

own corporation because he cannot defraud himself.  Fabian is fixated on this

argument and has gone so far as to practically admit that his sale-leaseback scheme

defrauded the creditors of SPI.  At the least, he has acknowledged that he caused all

of the transfers in question to be made by SPI to himself and to entities under his

exclusive control (although he denies that the transfers were fraudulent).

14.  The corporate entity has been recognized in law for centuries as a means

of conducting business while limiting the liability of owners.  Corporations may be

sued by shareholders for various causes of action, including breaches of fiduciary

duty.  The law appears to be clear that a corporation that is owned solely by one

person may not sue the owner for breaches of fiduciary duty, including fraud, because

the fraud of the sole owner is imputed to the corporation, and, as Fabian points out,

common sense indicates that a sole owner who breaches his duties to the corporation

is not likely to sue himself. It is also true that the sole owner of a corporation has the right to pay to himself the net profit from the operation of the business of the corporation, as dividends or some form of compensation for services rendered, according to the form in which the corporation is set up and subject to tax regulations. However, there are obvious exceptions that restrict the rights of a sole owner in dealing with the corporation, among which are these: (1) the sole owner may not defraud creditors of the corporation by depleting corporate assets by transferring them to himself; and (2) the sole owner may not operate the corporation in such a way as to commit fraud or maintain a criminal enterprise. Because the fraud and/or crimes of the sole owner committed while acting on behalf of the corporation are imputed to the corporation, it has been held that when a corporation files bankruptcy and a trustee is appointed, the sole owner's misconduct is likewise imputed to the bankruptcy trustee, who stands in the shoes of the corporation. This doctrine of *in pari delicto* has been held, erroneously some commentators believe, to preclude a bankruptcy trustee from suing the sole owner for damage to the corporate debtor.

15. However, Fabian's arguments miss the point. The Trustee is not suing him for damaging SPI, but rather for depleting the assets of the SPI bankruptcy estate and thereby defrauding its creditors. The Trustee also asserts that Fabian defrauded him. But the essence of the cause of action in the Remaining Proceedings filed by the

32

Trustee on behalf of the bankruptcy estate of SPI is the recovery of fraudulent transfers made by Fabian as sole owner of SPI that defrauded the creditors of SPI and its bankruptcy estate. To the extent that the Trustee has alleged injury to SPI, he is referring to the estate and not to the prepetition entity.

16. The Trustee's complaints against Fabian and others for the recovery of fraudulent conveyances were brought pursuant to Sections 544,[12] 548,[13] 549,[14]

---

[12]Section 544 provides, as follows:

**§ 544. Trustee as lien creditor and as successor to certain creditors and purchasers.**

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by–

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case,

33

whether or not such a purchaser exists.

(b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

(2) Paragraph (1) shall not apply to a transfer of a charitable contribution (as that term is defined in section 548(d)(3)) that is not covered under section 548(a)(1)(B), by reason of section 548(a)(2). Any claim by any person to recover a transferred contribution described in the preceding sentence under Federal or State law in a Federal or State court shall be preempted by the commencement of the case.

11 U.S.C. § 544.

[13]Section 548(a) provides, as follows:

### § 548. Fraudulent transfers and obligations.

(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a).

[14]Section 549 provides, as follows:

## § 549. Postpetition transactions.

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate–

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

(b) In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt

35

and 550[15]of the Bankruptcy Code and Section 15-207[16] of the Maryland Uniform

---

that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

11 U.S.C. § 549.

[15]Section 550(a) provides, as follows:

### § 550. Liability of transferee of avoided transfer.

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from–

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

[16]Section 15-207, which deals with actual intent to defraud, provides, as follows:

### § 15-207. Actual intent to defraud.

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors, is fraudulent as to both present and future creditors.

Md. Comm. Law Code § 15-207.

36

Fraudulent Conveyances Act, Md. Comm. Law Code § 15-201, et seq. ("MUFCA").

STANDING OF THE TRUSTEE TO RECOVER FRAUDULENT CONVEYANCES

17. The Bankruptcy Code invests the trustee with unique powers that combine the rights of creditors to recover fraudulent conveyances with the authority of a conservator to gather in the assets of the bankruptcy estate that were improperly disbursed prepetition. These powers, invoked here by the Chapter 11 Trustee, arise from Section 544(a) and (b) of the Bankruptcy Code. As Judge Derby of this Court observed in the case of *Greenbelt Coop., Inc. v. Werres Corp. (In re Greenbelt Co-op., Inc.)*, 124 B.R. 465 (Bankr. D. Md. 1991), regarding Section 544(a):

> Section 544(a) is often referred to as the strong arm clause. The reason for this term is that the trustee in bankruptcy stands in the shoes of a hypothetical judicial lien creditor.

> The reason for the trustee's enhanced position is due to the trustee's unique position as the caretaker of the estate and the trustee's responsibility to preserve the estate's assets for the benefit of all creditors.

*Id.*, at 471. (Citations omitted). In the recovery of fraudulent conveyances pursuant to Section 548(a), the Trustee's power is derived from Section 544, not from Section 541.[17]

---

[17]*See also*, in a different context from the avoidance of fraudulent conveyances, the opinion of the Fourth Circuit in *Steyr-Daimler-Puch of Am. Corp. v. Pappas*, 852 F.2d 132, 135 (4th Cir. 1988) ("The powers of a bankruptcy trustee pertinent to the [Chapter 7 trustee's suit against debtor corporation's alter egos] arise principally from

18.  Likewise, in the case of *In re PWS Holding Corp.*, 303 F.3d 308, 313 (3d Cir. 2002), the Third Circuit explained the invocation of Section 544(b) by a trustee to avoid fraudulent transfers using nonbankruptcy State law, as follows:

> Section 544(b) provides that, upon commencement of a case under the Bankruptcy Code, a trustee or debtor in possession "may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable" under the Bankruptcy Code.  11 U.S.C. § 544(b).  In other words, § 544(b) places the debtor in possession in the shoes of its creditors, giving it the right to prosecute individual creditors' fraudulent transfer claims for the benefit of the bankruptcy estate.  This provision of the Bankruptcy Code is consistent with its objective of equitable distribution.  *See N.L.R.B. v. Martin Arsham Sewing Co.*, 873 F.2d 884, 888 (6th Cir. 1989) (noting that "[t]o allow a creditor of the bankrupt to pursue his remedy against third parties on a fraudulent transfer theory would undermine the Bankruptcy Code policy of equitable distribution by allowing the creditor 'to push its way to the front of the line of creditors'") (quoting *In re Cent. Heating & Air Conditioning, Inc.*, 64 B.R. 733, 737 (N.D. Ohio 1986)); *see also Moore v. Bay*, 284 U.S. 4, 5, 52 S.Ct. 3, 76 L. Ed. 133 (1931) (observing that what is recovered for benefit of bankrupt's estate is to be distributed in equal parts among allowed unsecured claims that lack priority).

*Id.*  (Footnote omitted).

---

two sources: (1) the rights of the debtor, 11 U.S.C. § 541, and (2) the rights of creditors of the debtor, 11 U.S.C. § 544.").  As to prepetition causes of action that belong to the estate, *see In re Modanlo*, 412 B.R. 715, 724 (Bankr. D. Md. 2006) ("The statutory and decisional authority is clear that a bankruptcy trustee is the successor to property of the debtor's estate and is the legal representative of the estate," citing 11 U.S.C. §§ 541(a)(1) and 704(1)).

19.  "Section 548 serves the goal of increased creditor dividends by allowing the estate representative to avoid the offending transactions and bring the property back into the debtor's estate for distribution to creditors."  5 COLLIER ON BANKRUPTCY ¶548.01[1][a] (Alan N. Resnick & Henry J. Sommer, eds.)(16th ed.).

20.  The instant complaint differs from complaints in which a bankruptcy trustee attempted to pursue the personal claims of individual creditors, which is generally prohibited by the doctrine espoused by the Supreme Court in the case of *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 92 S.Ct. 1678, 32 L. Ed.2d 195 (1972) (bankruptcy trustee lacked standing to sue on behalf of a debtor's bondholders against an indenture trustee).  "*Caplin* has been read narrowly to mean a trustee lacks standing to pursue personal claims of a debtor's creditors but not general claims."  *Stamps v. Knobloch (In re City Communications, Ltd.)*, 105 B.R. 1018, 1020-21 (Bankr. N.D. Ga. 1989), citing *In re E. F. Hutton Southwest Properties II, Ltd.*, 103 B.R. 808 (Bankr. N.D. Tex. 1989) (suit by committee for injuries to a debtor partnership against general partner for RICO, fraud, breach of fiduciary duty could have been brought by bankruptcy trustee); *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1279-80 (7th Cir. 1989) (individual creditors had standing to bring RICO action even though bankruptcy trustee also had standing to recover fraudulently diverted corporate assets); *Green v. Bate Records, Inc. (In re 10th Avenue Record Distributors,*

39

*Inc.)*, 97 B.R. 163 (S.D.N.Y. 1989) (Chapter 7 trustee had standing to pierce corporate veil in alter ego action to collect property of estate for benefit of all creditors).  As indicated, these are "property of the estate" actions brought by a trustee based upon Section 541(a), rather than the type of claims asserted in the instant proceeding based upon Sections 544 and 548.  It was noted in *City Communications* that "[t]he courts agree that § 544 does not provide the trustee with standing to pursue an alter ego claim."  105 B.R. at 1020.  In this regard, see *State Bank & Trust Co. v. Spaeth (In re Motorwerks, Inc.)*, 371 B.R. 281, 291 (Bankr. S.D. Ohio 2007) (". . . § 544(a) does not confer standing on a trustee to bring creditors' tort actions under state law such as the Trustee's aiding and abetting claims in this case."); and *Stanziale v. McGladrey & Pullen, LLP (In re Student Fin. Corp.)*, 334 B.R. 776, 778-79 (D. Del. 2005) ("no support for the Trustee's contention  that § 544 provides him with standing to pursue the tort claims on behalf of SFC's creditors.");  *Welt v. Efloor Trade, LLC (In re Phoenix Diversified Inv. Corp.)*, 439 B.R. 231, 238 (Bankr. S.D. Fla. 2010) (trustee's complaint against accountants  to recover damages to the debtor for aiding and abetting the mismanagement of the company by the debtor's principal is property of the estate and not that of individual creditors, over which a bankruptcy court may exercise "related to" jurisdiction, and "trustee has standing to pursue claims that belong to the debtor itself.").  With respect to claims of individual creditors that were

assigned to a trustee, *see Logan v. JKV Real Estate Services (In re Bogdan)*, 414 F.3d 507, 511-14 (4th Cir. 2005) (Chapter 7 trustee had standing to sue debtor's co-conspirators for fraud on lenders who unconditionally assigned their claims to the bankruptcy estate.); and *Grede v. Bank of New York Mellon*, 598 F.3d 899 (7th Cir. 2010) (liquidating trustee appointed under confirmed Chapter 11 plan had standing to prosecute claims of individual creditors that had been assigned to him). *See also* 5 COLLIER ON BANKRUPTCY ¶ 544.01 at 544-4.

21.  A bankruptcy trustee's causes of action to recover fraudulent conveyances and preferential transfers, are independent of, and separate from, prepetition causes of action possessed by the debtor outside of bankruptcy.  These actions arise after the petition date, and therefore are not themselves property of the estate.  In *Guttman v. Martin (In re Railworks Corp.)*, 325 B.R. 709, 721 (Bankr. D. Md. 2005), this Court (Derby, J.) stated that

> Avoidance claims are not within the definition of property of the bankruptcy estate, because they [the claims] do not represent an interest of the debtor in property.  *See* 11 U.S.C. §541(a).  Rather, they are rights that the trustee and a debtor in possession are given in a bankruptcy case.

*Id.*, citing 11 U.S.C. §§ 544, 545, 547, 548, 549, 550.

22.  This is because the right to avoid and recover fraudulent transfers outside of bankruptcy belongs to the creditors, and not to the debtor.  *Official Comm. of*

41

*Unsecured Creditors v. Chinery (In re Cybergenics)*, 226 F.3d 237, 242 (3d Cir. 2000) ("Thus, at least outside of the context of bankruptcy, it is clear that a fraudulent transfer claim arising from Cybergenics' transfers and obligations belongs to Cybergenics' creditors, not to Cybergenics."). Section 544 transfers the right to recover fraudulent transfers from individual creditors to the bankruptcy trustee (or the debtor in possession) acting as a fiduciary on behalf of all creditors. Thus, any recovery of fraudulent conveyances pursuant to Section 544 is not limited to the amount of the claim of an individual creditor, but to the full extent of the conveyance. *Moore v. Bay*, 284 U.S. 4, 5, 52 S. Ct. 3, 76 L. Ed. 133 (1931). "Nevertheless, property that the trustee recovers from an avoidance claim becomes property of the bankruptcy estate," *Railworks*, 325 B.R. 709, 721 citing 11 U.S.C. §§ 541(3) and (7).

23.   The trustee is expressly authorized to bring an action to avoid a transfer as fraudulent, pursuant to Section 11 U.S.C. § 548(a).[18]   The trustee has the exclusive right to bring a fraudulent conveyance action during the pendency of the bankruptcy proceedings. *Hatchett v. U.S.*, 330 F.3d 875, 886 (6th Cir. 2003), *cert. denied*, 541 U.S. 1029, 124 S. Ct. 2094, 158 L. Ed. 2d 709 (2004).[19]   The purpose of vesting in the

---

[18]A debtor in possession is also qualified to do so as possessing the same powers as a trustee in the context of a Chapter 11 case.  11 U.S.C. § 1107(a).

[19]A plan trustee has also been held to possess the avoidance powers of Section 548(a) after the confirmation of a Chapter 11 plan, pursuant to its terms. *Guttman v.*

42

trustee responsibility for actions to set aside fraudulent transfers is to prevent a multiplicity of piecemeal litigation by creditors, thus insuring a more equitable distribution of the estate. *Committee of Unsecured Creditors v. Monsour Medical Center (In re Monsour Medical Center)*, 5 B.R. 715 (Bankr. W.D. Pa. 1980); *Gerken v. Harris (In re Auxano, Inc.*), 87 B.R. 72 (Bankr. W.D. Mo. 1988).[20]

"INTEREST OF THE DEBTOR IN PROPERTY"

24.   Section 548 requires that in order for a transfer to be avoidable as a fraudulent conveyance, the transfer must be of "an interest of the debtor in property." 11 U.S.C. § 548(a)(1). Fabian argued that the transfers he received from SPI were not property of the SPI bankruptcy estate and that SPI had no interest in the transferred

---

*Martin (In re Railworks Corp.)*, 325 B.R. 709 (Bankr. D. Md. 2005).

[20]The rationale for the trustee's standing has been explained, as follows:

Section 548's avoiding power exists for the benefit of a debtor's estate.  It serves to increase creditor dividends by increasing the estate's assets and by avoiding unfairly incurred obligations.  Given this goal, the Code restricts who can maintain an action under Section 548, sometimes referred to as whether there is standing to prosecute the action.

Section 548 vests the power to avoid fraudulent transfers in the bankruptcy trustee; it begins by stating that [t]he *trustee* may avoid . . ." In chapter 7 cases, this will be the entity appointed under section 701 or 703.  In chapter 11, section 1107 expands the definition of "trustee" to include the debtor in possession.

5 COLLIER ON BANKRUPTCY, ¶¶ 548.02 at 548.02[1].

funds because they were fraudulently taken or misappropriated from creditors.  This argument is rejected here as it was rejected by this Court in *Goldstein v. Colombo Bank (In re Maryland Property Assocs., Inc)*.,  2007 WL 1074069, \*18 (Bankr. D. Md. 2007), *aff'd*,  309 Fed. Appx. 737 (4th Cir. 2009) ("the money transferred by the debtors was not stolen, but . . . even if it had been, the debtors continued to retain an interest in it."), citing *Jobin v. Lalan (In re M & L Bus. Mach. Co., Inc.)*, 160 B.R. 851 (Bankr. D. Colo. 1993), *aff'd*, 167 B.R. 219, 221 (D. Colo. 1994) ("hopelessly commingled funds which the debtor obtained by fraud are property of the estate"); *Dicello v. Jenkins ( In re Int'l Loan Network, Inc.*, 160 B.R. 1, 11 (Bankr. D. D.C. 1993) ("a person who obtains property by fraud can transfer good title to a *bona fide* purchaser," and "therefore, that person must have title or at least some legally recognized interest in the property . . .characterized as defeasible title," which amounted to "an interest in the property as required under section 548);" *McLemore v. Third Nat'l. Bank (In re Montgomery)*, 983 F.2d 1389, 1393-94 (6th Cir. 1993) (debtor exercised sufficient dominion and control over funds that he transferred as part of a check kiting scheme so that the funds amounted to "property of the estate" and therefore were avoidable as preferences pursuant to 11 U.S.C. § 547).  *See also Rieser v. Hayslip (In re Canyon Sys. Corp.)*, 343 B.R. 615, 635 (Bankr. S.D. Ohio 2006) ("a Ponzi scheme operator possesses a property interest in the transferred funds," citing

44

*Floyd v. Dunson (In re Ramirez Rodriguez)*, 209 B.R. 424, 432 (Bankr. S.D. Tex. 1997)). *Merrill v. Abbott (In re Independent Clearing House Co.)*, 77 B.R. 843, 854 (D. Utah 1987) ("when a debtor obtains money by fraud and mingles it with other money so as to preclude any tracing and when the defrauded party does not timely avoid the transaction but accepts benefits under his contract with the debtor, the money is 'property' of the debtor within the meaning of sections 547 and 548 of the Code."). According to Fabian's own testimony, funds that comprised the transfers originated from SPI's accounts that contained funds that were fraudulently obtained and commingled with funds that SPI earned legitimately.

25. In *French v. Liebmann (In re French)*, 440 F.3d 145 (4th Cir. 2006) (holding that a trustee's avoiding powers under Section 548 extended to real property located outside the territorial limits of the United States, in the Bahamas), the Fourth Circuit emphasized that "§ 548 focuses not on the property itself, but on the fraud of transferring it." *Id.* at 150. The Court then stated its conclusion that property in which a debtor has an interest that the debtor fraudulently transfers is property of the estate under the expansive definition set forth in 11 U.S.C. §541(a)(1):

> Section 541 defines "property of the estate" as, *inter alia*, all "interests of the debtor in property." 11 U.S.C. §541(a)(1). In turn, §548 allows the avoidance of certain transfers of such "interest[s] of the debtor in property." 11 U.S.C. § 548(a)(1). By incorporating the language of § 541 to define what property a trustee may recover under his avoidance powers, § 548 plainly allows a trustee to avoid any transfer

45

of property that *would have been* "property of the estate" prior to the transfer in question – as defined by § 541 – even if that property is not "property of the estate" now.  *Cf. Begier v. IRS*, 496 U.S. 53, 58, 59 n. 3, 110 S. Ct. 2258, 110 L. Ed.2d 46 (1990) (reaching a similar conclusion about another avoidance provision, § 547 of the Bankruptcy Code); *Cullen Ctr. Bank & Trust v. Hensley (In re Criswell)*, 102 F.3d 1411, 1416 (5th Cir. 1997) ("These §541 'property of the estate' definitions have been directly linked with the term 'interest of the debtor in property' under § 547(b)."). Through this incorporation, Congress made manifest its intent that §548 apply to all property that, absent a prepetition transfer, would have been property of the estate, wherever that property is located.

*Id.* at 151-52.[21]

"REACH BACK" PERIOD TO AVOID FRAUDULENT CONVEYANCES

26.  The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") (Pub. L. 109-8, 119 Stat. 23, enacted April 20, 2005), amended Section 548(a) to extend the "reach back" period from one to two years prior to the date of filing of the petition to avoid fraudulent conveyances in bankruptcy cases filed after April 21, 2006.  However, because the SPI Petition Date was August 31, 2004, the avoidance of fraudulent conveyances in the instant case is governed by the former statute, and the one-year period is applicable.  More importantly, however, by

---

[21]In *French*, the Fourth Circuit noted a split between courts over whether fraudulent transfers are property of the estate before or only after their avoidance, but declined to "join the debate," "because we hold that §548 applies to the transfer in this case even assuming that §541's definition of 'property of the estate' does not by itself extend to the Bahamian property. . ."  *French*,  440 F.3d at 152, n. 2.

invoking the Maryland Uniform Fraudulent Conveyances Act, pursuant to Section 544(b), the Trustee has the ability of avoiding fraudulent conveyances that occurred during the three-year period before filing, pursuant Md. Courts and Judicial Proceedings Code Ann., § 5-101.

27.   In order to invoke the provisions of the State fraudulent conveyance law, pursuant to Section 544(b), and thereby benefit from the three-year reach back period, the Trustee must allege the existence of an actual creditor who could have avoided the fraudulent conveyance.  The failure to allege the existence of such a creditor, whether identified or unidentified, has been held to be fatal to the right to avoid fraudulent conveyances that occurred before the one-year period authorized in the Bankruptcy Code.  *See Campbell v. Cathcart (In re Derivium Capital, LLC)*, 380 B.R. 407 (Bankr. D. S.C. 2006); *Field v. Montgomery County, MD. (In re Anton Motors, Inc.)*, 177 B.R. 58, 64 (Bankr. D. Md. 1995); *and Tryit Enters. v. Gen. Elec. Capital Corp.*, 121 B.R. 217, 221 (Bankr. S.D. Tex. 1990), cited in  *Air Cargo, Inc. Litigation Trust v. i2 Tech., Inc. (In re Air Cargo, Inc.)*, 401 B.R. 178, 193 (Bankr. D. Md. 2008).  In the instant complaints, the Trustee has indicated the existence of such creditors sufficiently to invoke Section 544(b) and MUFCA.  *E.g., see Guttman v. Fabian*, Adv. Proc. No. 06-1319, ¶ 55, and  *Guttman v. Sentient Jet, Marquis Jet Partners, Fabian and Richards-Fabian, Adv. Proc. No. 06-1364*, ¶ 49.  In addition, the Trustee also

47

identified two such actual creditors as Fleet Business Credit and DeLage Landen Financial Services.

## THE TRUSTEE IS NOT TAINTED BY THE DEBTOR'S FRAUD IN MAKING THE TRANSFERS AND THEREFORE IS NOT SUBJECT TO THE DEFENSE OF *IN PARI DELICTO*

28.  Pursuant to Section 544, when prosecuting a bankruptcy cause of action for the recovery of fraudulent conveyances to an insider, the bankruptcy trustee is not bound by allegations that fraud on the part of the debtor facilitated or contributed to the making of the fraudulent conveyances.  There is often fraud on the part of both transferors and transferees in the making of fraudulent transfers that does not detract from the power and duty of a trustee to recover them.  Indeed, under Maryland law, the plaintiff in an action to avoid a fraudulent conveyance on the ground of actual fraudulent intent, must prove "that it was made with a fraudulent intent on the part of the grantor to hinder, delay or defraud his creditors, and that this intent was known to or participated in by the grantee."  *Oles Envelope Corp. v. Oles*, 193 Md. 79, 65 A.2d 899, 903 (1949).  Therefore, the doctrine of *in pari delicto*, which has been applied to bar certain causes of action brought by a bankruptcy trustee against third parties by imputing a debtor's prepetition fraud to the trustee, is not applicable to actions brought by a trustee to recover fraudulent conveyances, even when the third party being sued is an insider who was the sole owner or officer of a corporate debtor.

48

29.  The case that supplied the rationale for this rule is *Scholes v. Lehmann*, 56 F.3d 750, 754–55 (7th Cir. 1995),  *cert. denied*, 516 U.S. 1028, 116 S.Ct. 673, 133 L. Ed.2d 522 (1995) (Posner, J.), a nonbankruptcy cause of action for the recovery of fraudulent transfers brought in Federal court by a receiver.  As the Seventh Circuit stated in *Scholes* in the colorful language of Judge Posner:

> Though injured by Douglas, the corporations would not be heard to complain as long as they were controlled by him, not only because he would not permit them to complain but also because of their deep, their utter, complicity in Douglas's fraud.  The rule is that the maker of the fraudulent conveyance and all those in privity with him—which certainly includes the corporations—are bound by it.  *Getty v. Hunter*,  166 Ill. App.3d 453, 116 Ill. Dec. 825, 827, 519 N.E.2d 1040, 1042 (1988); *Peric v. Chicago Title & Trust Co.*, 89 Ill. App.3d 271, 44 Ill. Dec. 568, 411 N.E.2d 934 (1980).  But the reason, of course, as the cases just cited make clear, is that the wrongdoer must not be allowed to profit from his wrong by recovering property that he had parted with in order to thwart his creditors.  That reason falls out now that Douglas has been ousted from control of and beneficial interest in the corporations.  The appointment of the receiver removed the wrongdoer from the scene.  The corporations were no more Douglas's evil zombies. Freed from his spell they became entitled to the return of the moneys—for the benefit not of Douglas but of innocent investors—that Douglas had made the corporations divert to unauthorized purposes. *McCandless v. Furlaud*, *supra*, 296 U.S. [140,] at 159–61, 56 S.Ct. [41,] at 47]; *Texas & Pacific Ry. v. Pottorff*, 291 U.S. 245, 260–61, 54 S. Ct. 416, 420, 78 L. Ed. 777 (1934); *Southmark Corp. v. Cagan*, 999 F.2d 216, 222 (7th Cir. 1993). That the return would benefit the limited partners is just to say that anything that helps a corporation helps those who have claims against its assets.  The important thing is that the limited partners were not complicit in Douglas's fraud; they were its victims.
>
> Put differently, the defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is eliminated.  *McCandless v. Furlaud*,

49

*supra*, 296 U.S. at 160, 56 S. Ct. at 47; *Albers v. Continental Illinois Bank & Trust Co.*, 296 Ill. App. 596, 17 N.E.2d 67 (1938). Now that the corporations created and initially controlled by Douglas are controlled by a receiver whose only object is to maximize the value of the corporations for the benefit of their investors and any creditors, we cannot see an objection to the receiver's bringing suit to recover corporate assets unlawfully dissipated by Douglas.

*Id.*

30.  This rationale has been applied in the context of a bankruptcy trustee suing insiders for the recovery of fraudulent conveyances. *Corzin v. Fordu (In re Fordu)*, 209 B.R. 854, 863 (BAP 6th Cir. 1997) ("courts have consistently recognized that the Trustee may pursue fraudulent or preferential transfers despite the fact that the debtor was a knowing and willing participant to such conveyances."); *Kipperman v. Onex Corp.*, 411 B.R. 805, 880 (N.D. Ga. 2009) ("*in pari delicto* may not be used against the trustee to bar fraudulent transfer and preference actions"); *McNamara v. PSF (In re The Personal and Business Insurance Agency)*, 334 F.3d 239, 246-47 (3d Cir. 2003) (conduct of insider in fraudulently obtaining a loan, not imputable to bankruptcy trustee bringing suit to recover fraudulent transfers pursuant to § 548 and state fraudulent conveyance law as producing "inequitable result"). *Contra, Sender v. Buchanan ( In re Hedged-Investments Assocs., Inc.)*, 84 F.3d 1281 (10th Cir.1996); *Sender v. Mann*, 423 F. Supp.2d 1155 (D. Colo. 2006). *Cf. Pyne v. Hartman Paving, Inc. (In re Hartman Paving, Inc.)*, 745 F.2d 307 (4th Cir. 1984) (prepetition defective

50

deed of trust held not avoidable by debtor in possession using strong arm powers of trustee where debtor's actual knowledge of the defect was imputed to the debtor in possession).[22]

## THE TRUSTEE HAS PROVEN THAT THE ALLEGED TRANSFERS TO FABIAN ARE AVOIDABLE AS MADE WITH ACTUAL FRAUDULENT INTENT

31.  As required by Section 548(a)(1)(A), the Trustee has proven that the transfers in question were made or incurred "with actual intent to hinder, delay, or defraud" the entities that were creditors at the time or after the transfers were made. Admissions by Fabian in his guilty plea prove not only that he perpetrated the sale-leaseback scheme with actual intent to defraud creditors; but most important in the context of the instant complaint to recover fraudulent transfers, his admissions indicate that he had actual intent also to defraud and injure these same creditors by depleting the assets of SPI that would otherwise have been available to satisfy their claims. His admissions demonstrate that the transfers Fabian caused SPI to make to

---

[22]The *Hartman Paving* opinion has been widely criticized and limited to the peculiar facts presented. *See, for example*, *Glanz v. RJF Int'l Corp. (In re Glanz)*, 205 B.R. 750, 754–55 (Bankr. D. Md. 1997); *Wilson v. Moir (In re Wilson)*, 359 B.R. 123, 137 (Bankr. E.D. Va. 2006) ("Every other circuit that has addressed the issue has reached a contrary conclusion"), citing *In re Probasco*, 839 F.2d 1352, 1354 (9th Cir. 1988); *In re Sandy Ridge Oil Co.*, 807 F.2d 1332, 1336 (7th Cir. 1986); and *McCannon v. Marston*, 679 F.2d 13, 16–17 (3rd Cir. 1982). In any event, *Hartman Paving* can be distinguished from the instant case in that it imputed knowledge to the debtor in possession and not to a trustee in bankruptcy.

51

himself were made with actual fraudulent intent as part and parcel of the larger scheme to defraud creditors.

32.  As required by Section 548(a)(1)(B)(1), the Trustee has proven, by reason of the fact that there was no consideration for any of the transfers in question, that SPI "received less than a reasonably equivalent value in exchange for such transfer or obligation." *Id.*

33.  As required by Section 548(a)(B)(ii)(I), the Trustee has proven that SPI was insolvent on the date of the transfers or was rendered insolvent by the transfers. This is clear from the claims and schedules of assets filed in the case.

34.  Likewise, pursuant to MUFCA, the Trustee has proven that the transfers in question made within three years of the Petition Date were made with actual fraudulent intent pursuant to § 15-207, "as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors," and are therefore avoidable according to applicable nonbankruptcy (State) law.

AVOIDANCE AND RECOVERY OF THE TRANSFERS AND THE AMOUNT OF THE JUDGMENT TO BE ENTERED AGAINST FABIAN

35. The Trustee is entitled to a judgment against Fabian in the amount of the prepetition fraudulent transfers recovered pursuant to Count 2 of Remaining

Proceeding No. 1 in the amount of $3,046,644, with interest at the legal rate from the date the judgment is entered.[23]

36.  In calculating the amount of the judgment, the Court has based its figures upon the enumerated transfers set forth in Count 2 of Remaining Proceeding No. 1, supported by corresponding bank statements.  The Trustee's Line summarized the balances in accounts that Fabian owned in his own name or in the names of entities that he owned and controlled and therefore the amounts set forth exceed the amount of the judgment this Court will enter.  The Trustee's numbers are based upon some causes of action against Fabian or third parties over which this Court has decided not to take jurisdiction.

37.  When fraudulent transfers are avoided, Section 550(a)(1) amd (2) permits the Trustee to recover either "the property transferred, or, if the court so orders, the value of such property" from "the initial transferee of such transfer or the entity for whose benefit such transfer was made; or any immediate or mediate transferee of such initial transferee."  *Id.*  "The trustee is entitled to only a single satisfaction"  under Section 550(a).  11 U.S.C. § 550(d).

## II.  NONDISCHARGEABILITY OF THE JUDGMENT

---

[23]The Trustee did not request prejudgment interest or reimbursement of costs. See Exhibit B to the Line calculating damages [P. 71].

38. Fabian has been proven to have committed actual fraud as opposed to fraud presumed in law in the making of fraudulent conveyances on behalf of SPI to himself. Acting as the sole agent of a corporation, Fabian sold non-existent assets to innocent good faith purchasers for value, then caused the corporation to transfer the sale proceeds to himself for no consideration in fraud of the corporation and its creditors.

39. A debtor who participates in the making of a fraudulent conveyance with actual intent to hinder, delay or defraud creditors may be denied a discharge under Section 727 upon a complaint filed by his or her trustee on the same grounds of actual fraud, if proven by the trustee in a complaint to recover such transfers under Section 548. *Cohen v. Bucci*, 103 B.R. 927, 929-31 (N.D. Ill. 1989) (the intent required under §548 is the same as that required by § 727(a)(2)(A)); *Soza v. Hill (In re Soza)*, 542 F.3d 1060, 1066 (5th Cir. 2008) (". . . Bankruptcy Code also unwinds transfers made 'with actual intent to hinder, delay or defraud' creditors, . . . and may deny discharge on similar grounds," citing 11 U.S.C. §§ 548(a)(1) and 727(a)(2). Cited in 5 COLLIER ON BANKRUPTCY ¶ 548.01[3][b] at 548-26 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).[24]  *See also Nesse v. Laurie (In re Laurie)*, 2008 WL 886121, *8-9 (Bankr.

---

[24]Guttman did not pursue the denial of a discharge in the SPI case because (a) SPI was a corporation and (2) Fabian was not the debtor. Fabian filed his bankruptcy petition before the Remaining Proceedings could be prosecuted to judgment. Thereafter, Guttman filed the instant complaint in Fabian's Chapter 7 case.

Md. 2008) (debtor denied a discharge based upon actual fraud in the making of fraudulent conveyances).

STANDING OF THE CHAPTER 11 TRUSTEE AS A CREDITOR TO BRING THE INSTANT ADVERSARY PROCEEDING AGAINST A CHAPTER 7 DEBTOR

40.  This Court has already held that "a trustee of one bankruptcy estate has standing to file a complaint to determine dischargeability in another bankruptcy case." *In re Fabian*, *supra*, 2010 WL 1172950 *5-6 (Bankr. Md. 2010), quoting *Cundiff v. Cundiff (In re Cundiff)*, 227 B.R. 476, 478 (BAP 6th Cir. 1998), citing *Berkowitz v. Muller (In re Muller)*, 111 B.R. 911, 912 (Bankr. S.D. Cal. 1990) (noting, however, that "a trustee does not have standing to file a complaint to determine dischargeability in the case in which the trustee serves," citing *Houghton v. Hovatter (In re Martin)*, 64 B.R. 638, 639 (Bankr. D. Del. 1986).  *See also Schwab v. Jones (In re Jones)*, 206 B.R. 355, 356 (Bankr. M.D. Pa. 1997) (distinguishing *Muller* and holding that Chapter 7 trustee lacked standing to bring nondischargeability complaint against debtor because Schwab was Jones' trustee).

41.  Pursuant to Federal Rule of Bankruptcy Procedure 4007(a), "An action to determine whether a particular debt is excepted from a debtor's discharge – *i.e.*, a 'dischargeability determination' – may be instituted either by the debtor or by any

creditor."  4 COLLIER ON BANKRUPTCY ¶ 523.04 at 523-18, citing Rule 4007(a).[25]

42.   A bankruptcy trustee of a corporation that holds a claim against an insider who also files bankruptcy is a creditor of the insider's bankruptcy estate under Rule 4007(a), and may file an action to recover a nondischargeable judgment against the insider/debtor based upon actual fraud.

43.   The instant complaint to determine nondischargeability of debt is the equivalent of the filing of a proof of claim by the Chapter 11 Trustee as a creditor[26] holding a claim in Fabian's Chapter 7 bankruptcy case. *Transcolor*, 296 B.R. at 358-59 ("Such suits are the equivalent to the filing of claims against the estate and allowable under 11 U.S.C. § 501, despite the automatic stay."), quoting *Moran Fin.*

---

[25]Rule 4007(a) provides, as follows:

### Rule 4007.  Determination of Dischargeability of a Debt.

(a) Persons entitled to file complaint

A debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt.

Fed. R. Bankr. P. 4007 (a).

[26]The Bankruptcy Code defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor . . ." 11 U.S.C. § 101(10).  The Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . ." 11 U.S.C. § 101(5).

*Corp. v. American Consol. Fin. Corp. (In re J.T. Moran Fin. Corp.)*, 124 B.R. 931, 940 (S.D.N.Y. 1991).  The suit is derivative of the claims of creditors of SPI only in the narrow sense that any recovery against Fabian is based upon the claims of the estate itself against the insider for fraud that rendered the debtor insolvent as to those creditors.

44.  As the holder of a prepetition claim against Fabian, Guttman is a creditor of Fabian's Chapter 7 estate, both in his capacity as Chapter 11 Trustee, and as the representative of the Chapter 11 bankruptcy estate.  First, the judgment rendered here in favor of Guttman against Fabian for the recovery of fraudulent conveyances is based upon the actual fraud perpetrated by Fabian against all of the creditors of SPI as a body.  Second, Fabian committed actual fraud against the Chapter 11 Trustee by continuing his concealment of corporate assets from Guttman during the pendency of the SPI bankruptcy case.  This was accomplished through nondisclosure and outright perjury in the giving of false testimony and the filing of false and misleading financial statements that impeded the Trustee's administration of the case, all of which are examples of misconduct amounting to actual fraud and misrepresentation that was perpetrated upon the Chapter 11 Trustee himself postpetition.

45.  The fact that the Trustee was not the holder of a prepetition  judgment on the date Fabian filed his Chapter 7 case does not affect the Trustee's standing to obtain

57

a nondischargeable judgment against Fabian.[27]  The holder of either a prepetition judgment or an unliquidated cause of action has standing to bring suit in the bankruptcy court in order to obtain a nondischargeable judgment against a debtor.  As the Fourth Circuit stated in *Heckert v. Dotson (In re Heckert)*, 272 F.3d 253, 257 (4th Cir. 2001):

> . . . Certainly, in a proper case, bankruptcy courts have the power to issue judgments, see 28 U.S.C. § 157(b)(1), which grants authority to the bankruptcy judges to "enter appropriate orders and judgments" in title 11 cases, and see also 11 U.S.C. § 105(a), which grants power to bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Entry of such judgments has been allowed where there is an unliquidated claim that a party seeks to have determined in an adversarial dischargeability proceeding. See *Cowen v. Kennedy*, 108 F.3d 1015, 1018 (8th Cir. 1997) (allowing bankruptcy court to adjudicate issues of liability and damages in addition to determining dischargeability of debt where there was no prior state court judgment fixing liability); *Longo v. McLaren*, 3 F.3d 958, 966 (6th Cir. 1993) (same); *N.I.S. Corp. v. Hallahan*, 936 F.2d 1496, 1508 (7th Cir. 1991) (same).

*Id.*

---

[27]The Trustee was prevented from obtaining judgments against Fabian by reason of the intervening criminal prosecution and the automatic stay that arose when Fabian filed his own bankruptcy petition.  The Trustee's causes of action against Fabian for the recovery of fraudulent conveyances accrued before the petition date of Fabian's Chapter 7.  The fact that these claims were not reduced to judgment against Fabian prepetition in the Remaining Proceedings filed in the SPI case does not affect the standing of the Trustee to file the instant complaint against Fabian to obtain a nondischargeable judgment. The fact that they were not liquidated as to amount prepetition is of no moment.  *See In re McConkey*, ___ B.R. ___, 2011 WL 1436431, *5 (Bankr. D. Md. April 14, 2011).

46.  By reason of this Court having liquidated the amount of the fraudulent conveyances recoverable by the Chapter 11 Trustee against Fabian based upon actual fraud proven by the Trustee in the Remaining Proceedings, the question to be determined is whether the liquidated amount qualifies as a nondischargeable judgment, pursuant to 11 U.S.C. §523(a)(2), (a)(4) and/or (a)(6).

CREDITOR'S (TRUSTEE'S) BURDEN OF PROOF

47.  It is the creditor's burden of proof in a complaint to determine a debt to be nondischargeable to prove the required elements by a mere preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 284-91, 111 S.Ct. 654, 659-61, 112 L. Ed.2d 755 (1991).  Here, the Trustee has met that burden by more than the required standard, namely by clear and convincing evidence.

48.  In the instant complaint, there is overwhelming evidence of Fabian's actual intent to hinder, delay and defraud creditors.  First and foremost is the direct evidence of fraud in the form of his affidavit, sworn under penalties of perjury and made part of his guilty plea.  While Fabian has lately disavowed certain facts contained in his guilty plea previously sworn by him to be true,  such disavowals are unworthy of belief.  Having had the opportunity to judge Fabian's credibility while observing his demeanor on the witness stand at trial in open court on the record, this Court finds Fabian's testimony to lack credibility.  It was unbelievable, though practiced and

59

smooth.  He was unremorseful and self-serving.  It was the testimony of a self-confessed felon, whose penchant for truthfulness has been proven to be nonexistent. Second, the conclusion that Fabian continues to prevaricate is bolstered by the Trustee's presentation of documentary evidence that corroborates fully the facts set forth in Fabian's affidavit as the foundation of his guilty plea.  This documentary evidence, including bank statements and checks, leads this Court to conclude  that Fabian acted with actual fraudulent intent to harm SPI, the SPI estate and its creditors. Accordingly, this Court accepts as true and correct the facts set forth in Fabian's affidavit as being a detailed recital of the facts that  support the instant complaint.

SOLE ACTOR DEFENSE IS NOT APPLICABLE

49.  One who is the sole owner of a bankrupt corporation and caused the corporation to make fraudulent conveyances to himself and to other entities that he owned and controlled may be sued in his own bankruptcy case for a nondischargeable judgment based upon the commission of actual fraud.  Fabian acknowledged that Guttman has standing as a creditor to pursue claims against him in Fabian's own bankruptcy case.  If the sole actor defense is not available to Fabian in the recovery of fraudulent conveyances from him, then it must follow that he cannot raise the same prohibited defense when the holder of the claim seeks a determination that  the claim is nondischargeable.  This assumes, as has been proven here, that the same proof of

60

actual fraud required to be proven to recover the conveyances has been proven as well as to the nondischargeable basis of the claim.  It must be obvious that after a bankruptcy case is filed, the insider and sole owner of a corporate debtor who commits fraud against the corporate debtor's bankruptcy estate and/or the corporate bankruptcy trustee cannot raise the sole actor defense.  The Trustee's claim against Fabian for prepetition and postpetition fraud will not be defeated by the sole actor defense.

50.  Fabian has misconstrued his ability to raise the sole actor defense in the context of this proceeding.   The Trustee's actions (1) to recover fraudulent conveyances and (2) to have the judgment for their recovery determined to be nondischargeable cannot be defeated by Fabian's defense that his own fraud against the corporation was not actionable by the corporation outside of bankruptcy.  As indicated, outside of bankruptcy, the corporation could not have brought the actions to recover fraudulent conveyances. *The Personal and Business Insurance Agency*, 334 F.3d at 243 (the trustee's claim is not subject to the defense of *in pari delicto* in section 548 actions, because this claim belonged to creditors, not to the debtor). To recognize such a defense would frustrate the purposes of the Bankruptcy Code and would disable the trustee in the orderly administration of the bankruptcy estate and the collection of estate assets for the benefit of creditors.  The *in pari delicto* defense raised by Fabian is particularly inappropriate here because, given the magnitude of the

61

claims against the SPI bankruptcy estate, there is absolutely no possibility that Fabian will derive any potential benefit from a recovery by Guttman.

51.  The cases cited by Fabian in support of his position, including *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991), are inapposite.  He cited the decision  of the Supreme Court in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L. Ed.2d 552 (1979), for the proposition that Guttman cannot offensively use collateral estoppel to foreclose Fabian from relitigating his guilt that was established by his guilty plea in the prior  criminal proceeding.  The opinion is not applicable to the instant proceeding because Fabian has not been precluded  from recanting his sworn testimony set forth in the affidavit appended to his guilty plea.  Rather, this Court has considered his repudiation of some of the facts set forth in the guilty plea and has disbelieved his allegations.

52.  Fabian also cited the unreported decision of this Court (Derby, J.) in *Fleming v. McCoskey (In re McCoskey)*, 2006 WL 5217793 (Bankr. D. Md. 2006), which held that while the bankruptcy court was required to give collateral estoppel effect to a default judgment entered against a debtor by a State court, the bankruptcy court could only grant summary judgment to the plaintiff on Section 523(a)(2)(A) and not other subsections, where only some issues required to be proven under Section 523 had been litigated in the State court and other unlitigated issues represented

disputes of material fact between the parties.  The opinion is inapposite to the present proceeding which is before this Court for decision after a trial on the merits, where this Court has determined that the Trustee has proven all of the allegations required under Section 523(a)(2)(A) and (a)(6) to have the debt determined to be nondischargeable.

53.  According to Fabian's sworn statement filed in support of his guilty plea, the fraud that he perpetrated against the creditors of SPI continued after the petitioning creditors forced the corporation into bankruptcy and even continued after Guttman was appointed trustee. *Cf. Rosen v. Gemini Title & Escrow, LLC (In re Hoang)*, 2011 WL 1237652 (Bankr. D. Md. March 31, 2011) (debtor's postpetition misconduct while a Chapter 11 debtor-in-possession, in which she engaged, for her personal benefit and adverse to the interests of the bankruptcy estate, in an asset-concealment scheme prior to conversion of the case, was not imputed to the Chapter 7 trustee). Therefore, in that case, the *in pari delicto* doctrine did not apply to bar the trustee's claims against a settlement company, law firm, and attorney that allegedly aided and abetted the debtor in her scheme, citing *Kremen v. Harford Mut. Ins. Co. (In J.T.R. Corp.)*, 958 F.2d 602 (4th Cir. 1992) (arson of restaurant committed by debtor's insider postpetition did not bar trustee's claim against fire insurer for proceeds of

insurance policy).  It must be pointed out, that the foregoing opinions all dealt with claims brought by the Trustee based upon Section 541, and not Section 544.

DECISION RENDERING JUDGMENT NONDISCHARGEABLE FOR FRAUD, PURSUANT TO SECTION 523(a)(2)(A) and (a)(6).

54.    The judgment in favor of Guttman as Chapter 11 Trustee is nondischargeable as to Count 1, for fraud and misrepresentation against the Chapter 11 Trustee, the estate of SPI and its creditors, pursuant to 11 U.S.C. § 523(a)(2)(A); and as to Count 4, pursuant to 11 U.S.C. § 523(a)(6), for willful and malicious injury to SPI, its bankruptcy estate and its creditors.  Fabian intentionally and deliberately diverted funds from SPI and its bankruptcy estate and converted them to his own use. The transfers were fraudulent and malicious as they were committed unlawfully, as borne out by the guilty plea and documentary evidence.  Fabian's willful and malicious conversion of funds in making the fraudulent transfers resulted in willful and malicious injury to SPI and its bankruptcy estate.  *See Spinoso v. Heilman (In re Heilman)*, 241 B.R. 137, 148, 150, 171-72 (Bankr. D. Md. 1999) (defining "actual fraud" as "any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception," citing *Wilcoxon Constr., Inc. v. Woodall (In re Woodall)*, 177 B.R. 517, 523 (Bankr. Md.

64

1995); and "willful" as "deliberate or intentional," citing *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S. Ct. 974, 140 L. Ed.2d 90 (1998)).

55. "In order to sustain an action under Section 523(a)(2)(A) of the Bankruptcy Code, a plaintiff must show that: (1) the defendant made a representation; (2) the defendant knew at the time she made the representation that it was false; (3) the defendant made the representation with the intent and purpose to deceive the plaintiff; (4) the plaintiff justifiably relied on the false representation; and (5) the plaintiff suffered damages as a proximate result of the representation." *Guaranty Residential Lending, Inc. v. Koep (In re Koep)*, 334 B.R. 364, 371-72 (Bankr. D. Md. 2005). All five of the required factors have been proven by the Trustee.

56. The Court finds that the Trustee is entitled to have rendered as nondischargeable the judgment against Fabian in the amount previously indicated, pursuant to Counts 1 and 4 of the instant complaint (Section 523(a)(2)(A) for actual fraud and Section 523(a)(6) for willful and malicious injury). Therefore, it is unnecessary to address the issue of whether nondischargeability of debt is appropriate pursuant to Section 523(a)(4), which would lengthen this opinion beyond all reason.

NO DOUBLE RECOVERY

57. The instant complaint for a nondischargeable judgment based upon fraudulent conveyances is different from causes of action held by individual creditors,

which relate to individual claims they seek to collect, and wholly separate from the mail fraud conviction obtained by the Government.  That prosecution was instituted to vindicate Federal criminal statutes that include penalties, including incarceration, fines, forfeitures, and only incidentally, restitution.  While some of the same operative facts may be adduced to support different causes of action, the damages are recoverable in different amounts for different injuries to different entities.  Consequently, there will be no double recovery in favor of the Trustee against Fabian for fraudulent conveyances received by Fabian in the corporate Chapter 11 case.  *See* 5 COLLIER ON BANKRUPTCY ¶548.01[2][d] at 548-24.

58.  The entry of a $ 3,046,644 judgment in this proceeding in addition to the $ 40 million restitution and forfeiture orders imposed upon Fabian in the criminal case does not represent a double recovery.  A nondischargeable judgment, like any other judgment, is a "mere hunting license" for the successful party to attempt to locate the assets, past, present or future, of the judgment debtor in order to satisfy the obligation.  *Satelco, Inc. v. North American Publishers, Inc.*, 58 B.R. 781, 786 (Bankr. N.D. Tex. 1986).  The fact that Fabian's Chapter 7 is a "no-asset" case is of no moment.  Armed with a nondischargeable judgment, the Trustee will be free to hunt for assets as yet unknown or undisclosed by Fabian.

66

59.  The likelihood that Guttman will ever collect a penny from Fabian may be highly doubtful in light of the magnitude of the debtor's liabilities.  However, whether the nondischargeable judgment is collectable is immaterial to the question of whether the Trustee has asserted a sufficient reason to bring the present action, where the rendering of a nondischargeable judgment against Fabian will result in the liquidation of the Trustee's claims on behalf of the bankruptcy estate of SPI and permit him to close the case.

60.   At trial, Guttman estimated that in his career as a trustee, he has administered between 12,000 and 13,000 bankruptcy estates.  This Court accords great weight and respect to the Trustee's business judgment in prosecuting the Remaining Proceedings to judgment for the benefit of the SPI estate and in filing the instant complaint to exclude the judgment from Fabian's bankruptcy discharge.  *See* 6 COLLIER ON BANKRUPTCY ¶ 704.03 at 704-11.

WHEREFORE, Guttman will be awarded a nondischargeable judgment against Fabian in the amount of  $ 3,046,644.

***ORDER ACCORDINGLY.***

cc:   Joel I. Sher, Esquire
Shapiro Sher Guinot & Sandler
36 South Charles Street, Suite 2000
Baltimore, Maryland 21201

Joshua D. Bradley, Esquire
Rosenberg, Martin, Greenberg, LLP
25 South Charles Street, Suite 2115
Baltimore, Maryland  21201

Counsel to the Plaintiff/Chapter 11 Trustee for Strategic Partners International, Inc.

Zvi Guttman, Esquire
P.O. Box 32308
Baltimore, Maryland 21282-2308
Chapter 11 Trustee for Strategic Partners International, Inc.

Plaintiff

Mr. Alan Brian Fabian
Inmate No. 43008-037
Federal Prison Camp
P.O. Box 2000
Lewisburg, Pennsylvania 17837

Defendant

Office of the United States Trustee
2625 U.S. Courthouse
101 West Lombard Street
Baltimore, Maryland 21201